22-7014 Metropolitan Washington Chapter, Associated Builders and Contractors Inc., Eppalance, Miller and Long Concrete Construction Inc., and Emmett Morris Jr. v. District of Columbia, a Municipal Corporation, and Muriel Bowser, in her official capacity as Mayor of the District of Columbia. Mr. Kiernan for the Eppalance, Mr. Phillips for the Eppalese. Hey, please support Judge Edwards used to tell his Georgetown Law students to act facetiously. The only thing appellate courts care about is, is the case properly enforced and what's the standard of review. I'm going to address both of those points. I know that's what's on the court's mind. But I don't want to lose sight of the bigger picture, which is that the decision appeals from is confirms or affirms the proposition that in creating a municipal government, the District of Columbia, Congress intended that that government have the unreviewable authority to enact economic protectionist legislation that no other state or city in the United States would have the constitutional authority. What do you mean unreviewable? It's reviewable by Congress and it's reviewable by courts. Well, I mean, it's automatically reviewable by Congress. You don't dispute that. Well, the Congress always has authority to legislate for the district. Sure. So it's reviewable by Congress. But Congress has not acted on this issue. I don't think that doesn't mean it's unreviewable. It just means Congress chose not to intervene. Congress chose not to act. I agree. Okay. And courts can review. And here we are reviewing. The question is simply just because you can get reviewed doesn't mean someone wins on the merits of anything they bring. My point is that this type of economic protectionist legislation has routinely been struck down all over the country under constitutional provision. The lower court said that neither the Privileges and Immunities Clause nor the Due Process Clause affords an avenue to review it, even though Privileges and Immunities would apply everywhere else in the country. And if you process, the court said, that's never been done before. It reminds me of the case you just heard. That's never been done before and therefore we're not going to. And it all comes back to obviously this court's decision and the Duhay decision and the Duhay case back in the 30s, which the court said that when Congress legislates for the District of Columbia, it is not subject to the Privileges and Immunities Clause, a proposition with which we do not disagree. The question is, as I understand the argument made by the District, is whether somehow that immunity from the application, let me use a different phrase, that exclusion from the Privileges and Immunities Clause has somehow traveled through to the City Council of the District of Columbia and that that was done intentionally by Congress through the Home Rule Act in order to, in some sense, make up for the fact that Congress otherwise limited the Council's authority, for example, to enact commuter tax, to affect the jurisdiction of local courts, etc. What's your argument with respect to standing, though? I mean, you've got Metro Washington as a corporation here that generally does not apply to the Privileges and Immunities Clause. So we are here, Metro Washington is the remaining party in this case. We are here through associational standing. We met that in the hunt test below. It's essentially not really disputed because this issue has remained to the work of our organization. It is an issue on which we have been involved in lobbying and in the concern of our members and their employees for many years. We've litigated this issue elsewhere. Other chapters have litigated this issue elsewhere in the country. But is that standing distinct for Privileges and Immunities versus Commerce Clause? The issue, I think, Your Honor, on the Privileges and Immunities analysis is Privileges and Immunities reflects an individual right of a person, but it's also a structural limitation on the power of government. Our members and their employees are the vehicles through which the law is acting to discriminate against non-residents. In other words, we're the ones that have to comply with the law and who suffer the penalties if not compliant. And we have to do that to our employees. So I think the Privileges and Immunities analysis, while the employees may have their own separate claim, which the district court below found these individuals did not approve of, but while individuals may have that claim, I don't think that diminishes the right of the organization, of the association, I should say, to speak to the issue of the Privileges and Immunities because they are the ones who are actually directly involved. They have to be impacted and have to modify their conduct and suffer penalties. But Metro is a corporation. Well, it's a chapter of a larger organization. It's an association of a number of companies, gold proprietorships, and others who are members of this trailer. But all your members are businesses that are not protected by the Privileges and Immunities Clause. But our employees are. Are you a trade association of those employees? I'm sorry? Are you a trade association that supports to represent those employees? They don't separately represent the employees. We are working with the companies. The companies. With the employees and it's the companies. To have standing, the HUNT standing, that you're the associational standing, on the grounds of the employees, your members would have to be the employees. And you would have to have a show that the interests you advance are those of employees. And that can be very distinct from the businesses that employ them. I think, but I think in this case, Your Honor, associations, because it is because the statute acts against the employers who are required to then take steps that we say are unconstitutional as to our employees. We're the vehicle for which this is implemented. Our members don't want to do it. They're the ones. No, I understand, but they're not protected by that. They can bring the Dormant Commerce Clause challenge, but those members may feel very much injured. And I don't think anyone has quibbled with those assertions in this case, but they simply aren't protected by the Privileges and Immunities Clause. And I haven't heard you dispute that substantive point about the scope of the Privileges and Immunities Clause. But what I'm disputing, Your Honor, is that it's limited to, that the Privileges and Immunities Clause is limited in its application to the individual right of an employee, as opposed to it is also a structural limitation on the power of government to enact it. Well, of course it is. I mean, the Constitution is filled with structural limitations, but that doesn't mean everyone can enforce them. Not everyone is persons for purposes of other constitutional provisions either. Sometimes they are, sometimes they aren't. It depends on the provision. But for this one, I thought it was recognized in the law that businesses are not protected by it. Businesses, as I understand the law, a business, a corporation, does not under firm precedent have its own Privileges and Immunities Claim as against the government. A business does not have the right to travel, for example. It doesn't have that kind of right. But this is a different situation in which the residential preference is being implemented by directly acting on those employees in a way that is unconstitutional under either the Privileges and Immunities Clause or is applied to the due process. The second point is our employers, our members, are not that distinct from their employees. They have to deal with the employee on assignments, bidding. Of course, that's how the employer-employee relationship works. But you never claimed in the district court, and I've seen no affidavits from employees saying that we have this injury just like we commonly require for associations elsewhere to establish standing. I see nothing here in this record that says that you purport to be an association of employees as opposed to of employers. You're not an association of employees. You're an association of employers who necessarily have employees. Is that your point? My point was we have sole proprietorships in our organization. We have the employees are what should be considered for these purposes as part and parcel of whom we represent. I think that's appropriate. And I think the record was clear that that's what the standing was below. And it was upheld with below. The only change now, I think… Well, there were employees present in the litigation below. They're not here. …was whether the fact that the other parties didn't have the stamina, if you will, to continue with the case, somehow now deprives us of that standing that we had below. And I think under the court's decisions, when an entity adheres to the associational standing, it's not required that the member also be in the lawsuit or on appeal, which is what we have here. The district has also raised the issue of prudential standing, which I think dovetails a little bit with the issue the court's raising, which is are we asserting the rights of parties that are not before the court? The answer to that is no, we're not. This is the same claim we have asserted from the outset. Let me clarify one other thing. I'm trying to understand, because we have that Duhay decision from our court. And as I understand it, your argument is that the Home Rule Act changed things, made the district subject to the Privileges and Immunities Clause. Is that right? As a matter of federal legislation? As a matter of federal legislation, the municipal government set up by Congress should be limited in its powers by the Privileges and Immunities Clause or incorporating the rights, incorporating the process, whichever way. Right. And you say they should be. I thought you said that. I thought your argument was that they should be. It wasn't normative, but that, in fact, the consequences of the Home Rule Act was to subject the district to the Privileges and Immunities Clause. I think that's correct. I think that's correct. When the district is acting on its own behalf, not Congress. But didn't Congress explicitly include the Privileges and Immunities Clause in the organic acts of, for example, Puerto Rico, Guam, etc., but not the Home Rule Act? It did. But I don't think, Your Honor, that that means that they meant to create in the city council a power greater than any other legislature has. And part of the reason I say that is because of the legislative history of the Home Rule Act, in which much attention was paid to how are we going to limit the scope and power of this new government. And to the commuter tax and the fact that jurisdictions, of course, great attention paid. And it seems to me that the idea that silently Congress intended to invest the District of Columbia Council with more authority constitutionally than any state legislature in the country just doesn't make sense. I agree. The act does not call it out specifically. And as the district pointed out in its brief, and as we argued below with the judge, there is no specific reference to Privileges and Immunities either way in the Home Rule Act. But I think that the district's position is that's because Privileges and Immunities does limit the power of the municipal government. And the citizens of the District of Columbia are not entitled to the protections of the Privileges and Immunities clause, presumably when they go out. I think that's an untenable position in this day and age. Your position is that Congress said in the Home Rule Act, that unless we specifically enact a limitation, the City Council has plenary authority. Unless Congress, during the oversight period, disapproves of one of its enactments, or otherwise enacts legislation as a federal legislature, changing something that would affect the abilities of the local government under the Privileges and Immunities Act? Yes, Judge Rogers. That's our position. Yes. Congress at any time can legislate whether there's an act pending by the Council or not pending or during the review period. It can do whatever it wants. And that's not the issue in this case. I think what is the issue in the case is should the fact that Congress has chosen not to legislate be deemed an endorsement or some sort of congressional action? There's no precedent that I could find, and I'm sure if the District had found it, it would have cited it, in which a court has said, because Congress didn't act on it, didn't make its own act, that somehow it therefore endorses or adopts it as if it were a congressional action. There are two aspects to it. One, it didn't act during the congressional review period, which is unique to the District of Columbia under the Home Rule Act. And it also didn't take other action that would address whether the District of Columbia was subject to the Privileges and Immunities Clause. Yes, Your Honor. It's both sides of that, yes. I agree. So in that silence, the Court has no option other than to conclude that the Council had this authority and now is subject, essentially, as would a corporation in the state. I think that's correct, Your Honor. The position that we would take is that once the new government is stood up as an independent legislative body, subject always to Congress' plenary power to legislate for the District, that it should be subject to the same limitations as every other government in the country regarding its ability to enact this kind of residential preference law. And that Congress' decision not to act in this area should not be, and I can't find a precedent for therefore being, Congress itself is now acting, and since Congress isn't subject to privileges and immunities, therefore, this action by the City Council shouldn't be subject to the same. Judge Rogers, did you have more follow-up questions? I think I've taken up enough time. Do you know if the Privileges and Immunities Clause applies to Indian tribes? I don't know the answer. I've not looked. And then I want to just understand your theory. So the Home Rule Act, the structure you've been discussing with Judge Rogers, in your view, Congress can't pass a law that rewrites the Constitution, right? And so the effect of, if the Home Rule Act is read the way you propose, then really what it says is, as a federal statutory matter, you apply that same protection and legal tests to actions of the District of Columbia as a matter of federal statutory law. This federal statute requires the District to color within the lines of the Privileges and Immunities Clause. I agree with that. And to just clarify, maybe to push it a little bit, it does not mean that acts of the District of Columbia government become congressional statutes just because Congress set up a municipal government and retains, obviously, its constitutional right to act in a plenary fashion. I agree with that, yeah. I think I'm trying to make a different point, and that is, when Congress passes a statute like it did in the Child's Reference and the Organic Acts for Alaska, Virgin Islands, and Guam, it can't rewrite the Constitution just by passing a law. So what it does is, by a statute, say you, jurisdiction, will be subject to the same obligations as a state is under the Constitution's Privileges and Immunities Clause. And courts will apply the same legal analysis and same legal tests. But it is, and if the District fails to color within those lines, it has exceeded its authority under the Home Rule Act, much like a federal agency can exceed the authority delegated by Congress. Congress would have said, District, you can do A, B, C, and D, but you can't, under your theory, violate the Privileges and Immunities Clause in the process, and you can't violate Article I, Section 10, and any other arguments that folks want to make about the scope. So if they, if here, if this statute violated, if the Home Rule Act brought that protection in, and they violated it, that would be a statutory violation, that they exceeded their authority under the Home Rule Act, correct? Correct. Have you made any statutory arguments in your case? No, Your Honor, no. So you've only argued that the Privileges and Immunities Clause, in its own right, as part of the Constitution, prohibits the District from doing this, not that the Home Rule Act prohibits them from doing this. That's correct. We have not made that argument. But Congress couldn't have changed the content of the Privileges and Immunities Clause with the Home Rule Act. The Privileges and Immunities Clause has not changed, to my knowledge, has not been amended between Duhay and today. How does the Commerce Clause, do you have any distinction in the arguments how it applies with respect to whether the District is expending its own funds versus not doing so? On the Commerce Clause issue, Your Honor, as I think laid out in our papers, this is a situation in which the law applies to situations in which the District is not itself a contracting party. It is acting as a regulator. It is requiring for purposes of its own regulations to drive income, tax revenue, etc. that private employers do these. And it's very distinct from the Boston case and others where the government is actually using its money to go, you know, contracts for a building or something. So you would read the papers to indicate that an as-applied challenge was put forward? What's that, Your Honor? That an as-applied challenge was put forward. Yeah. What's your as-applied challenge? What are the facts of your as-applied challenge? I'm sorry, maybe I misunderstood the question, Your Honor. I'm sorry. We filed this as a facial challenge, basically at a pre-enforcement stage just as the new law was coming into effect. Because the new law increased substantially the requirements and the penalties. So when we started the case, it was essentially a pre-enforcement case. Got it. Because we knew this was coming. And then as the case unfolded over 10 years, we supplemented the record with the instances in which the law was applied against companies and, we argued, employees. One more quick question. You mentioned sole proprietorships in your membership. You're not arguing that the Privileges and Immunity Clause does apply to sole proprietorships as sole proprietorships, are you? No. What I don't know, Your Honor, is whether we do have members who use the AKA, or not a technical corporate form, but an individual. Sorry, the AKA? In other words, they are a business that's just themselves. They use a business name, but they're not actually a corporation. It's just John Jones Plumbing. Okay. Just to be clear, back to the issue on as applied, you mentioned facial challenge, but I believe on the JA record, maybe 53, it does say as applied? That may be the original complaint, Your Honor, I think. Okay. But are you suggesting that there's only a facial attack? I think that's really the only thing we've pursued. Okay. Yes. Judge Rogers, do you have any more questions? No, thank you. All right, thank you very much. We'll give you a couple minutes for rebuttal. Thank you. Thank you, Your Honor. Good morning and may it please the court, Graham Phillips on behalf of the District of Columbia. As the Supreme Court observed shortly before the enactment of the Home Rule Act, unlike either the states or territories, the district is truly sui generis in our government structure. In many respects, that unique constitutional status operates to the detriment of the district and its citizens, most notably in denying them representation in Congress. But there are certain provisions of the Constitution that are limitations and restrictions explicitly framed as limitations and restrictions upon states, and thus do not apply to the district, unless Congress extends them to the district by statute. The Privileges and Immunities Clause is such a provision. It does not, of its own force, apply to the district because it applies to states, as this court has held. It has not been statutorily incorporated against the district, and it is not indirectly applicable through the Fifth Amendment's due process clause. So if this court reaches the merits of Metro Washington's Privileges and Immunities argument, it should reject it. But I don't think this court should reach those merits because Metro Washington, which is the sole challenger here, lacks prudential standing to make a Privileges and Immunities argument. And it's that lack of prudential standing that I want to focus on first. In particular, I'd like to push back against the notion that we've forfeited this issue in any way. In our very first filing in the district court, in our motion to dismiss, we specifically argued that Metro Washington and its corporate members could not bring a Privileges and Immunities argument. And the district court agreed with us. In its motion to dismiss ruling at Joint Appendix 87, footnote 9, the district court wrote that Metro Washington and its corporate members, quote, do not have standing to challenge the First Source Act under the clause, end quote. And that was a ruling about prudential standing, even though the district court did not use the word prudential. And I think we know that because that ruling followed after a sort of lengthy explanation of why Metro Washington and its corporate members did have Article III standing to challenge this step. And I just want to make clear that our arguments here on appeal is not an Article III standing argument. It is a prudential standing argument. So that issue was both pressed and passed upon below. So I don't think there's any argument that we have forfeited in any way. As a practical matter. Did you have an obligation to renew it? A summary judgment? Oh, I don't think so. And I don't know why it would have made sense to do so, because there remained individual plaintiffs throughout the entirety of the proceedings below. So we the trial court had sort of already ruled as a matter of law correctly that the corporate entities could not make this type of argument. And then we were we we still had to sort of address it because there were the individual plaintiffs. But so I'm not aware of any precedent that would say we had to renew that. And I don't I don't think Metro Washington has argued that we specifically that we needed to renew it in that way. So, you know, just on the sort of substance of the prudential standing, I think it's fairly straightforward. Corporations do not have rights under the privileges and immunities clause that settled precedent. And so the only way that Metro Washington can conceivably be here invoking the privileges and immunities clause is if it's sort of implicitly invoking the rights of third parties, namely nonresident workers. But, you know, in their opening brief, they sort of not sort of explicitly said that they are not seeking to invoke the rights of anyone else. And I think my friend on the other side conceded that again here at the podium. So I think I think that's the end of the matter. If they're not trying to invoke someone else's rights and they're truly only trying to invoke their own, they don't have any. And that's that's the end of it. But even if you sort of say they represent by representing. The businesses are necessarily also representing their employees who are burdened by this. Yes, I think that's incorrect. I think they don't cite any authority for that proposition, I think, because there there is none. An employer and its employees are very much distinct legal entities that often have divergent or even actively adverse interests. And they are they are they're a different party. And one, an employer could try to invoke third party standing for employees. We're not saying that can that they can never sort of obtain that type of third party standing. But Metro Washington has not done so here. And they explicitly sort of disavowed this and have not grappled with the sort of well-settled law about how you show that you can have third party standing. So I think even if they had sort of articulated that in reply, it would it would have come too late. But it's it's not fair either. So I think that that can be the end of the court's analysis on the privileges and immunities issue. But I'm just to go back. If we agree with the association of standing, does your potential standing argue? No. Thank you for asking. They're they're distinct. And so we're not disputing that Metro Washington has associational standing to sort of. I think practically what that lets them do is stand in the shoes of their particular members that the particular members that they have identified in this litigation. And they have identified some. But all of those are corporations. So associational standing sort of gets them down one level, but it gets them down to a level where where the parties are still corporations who lack any privileges and immunities rights. So I don't think that helps. There was some brief mention here about that they may have members who are sole proprietors. I don't you know, I can't say that that's not true, but I don't think that matters either. Sort of for two reasons. First and most importantly, because no such sole proprietor has been identified in this litigation. And this court's case law about association standing says you do have to sort of specify who are the members of your association who suffered the requisite injury in some form during the litigation. And no sole proprietor has been identified here. Just as a sort of secondary matter. You know, again, that even setting aside the corporate form problem, the employers are not the ones being discriminated against on the basis of residency. This law treats all employers exactly the same, whether they're a District of Columbia employer or a Virginia employer. So even if we didn't have this sort of categorical are as to corporations, which we do, they would still separately not have first party standing because of that issue. Do you know if privileges and immunities applies to Indian tribes? I don't, Your Honor. I had not considered that question before you asked it. With respect to the privileges and immunity clause, does it matter if Congress passes legislation versus here the District of Columbia passing the legislation? Well, so when Congress acts, it unequivocally is not constrained by the privileges and immunity clause. You know, our position is that the District of Columbia Council is not either. It's it's it's not sort of directly by virtue of the Constitution because it's not a state. And Congress has not constrained it by a statute to apply privileges and immunity clause. We don't dispute that Congress could do that for the district in the way that it has done for other territories like Puerto Rico and Guam. But in in point of fact, it has not done so for the district. And I'm happy to delve further into that if the court has any questions. I guess maybe one thing I just thought I'll raise that I conceivably could matter either for this issue or the dormant commerce clause. You raised a question about there. There is one reference in the in the complaint that says as applied. But there's no there's no explanation in either in the complaint itself or in anything that subsequently happened in. In what sense this case entails and has applied challenge. I think my friend on the other side has recognized that we are only dealing with the facial challenge. And I think that that would matter if this court were reaching the question of how the privileges and immunities substance plays out here. But I don't think the court should for either of our kind of arguments in parts one and two of our brief. But I also think it matters for the dormant commerce clause issue because. This act does very much apply in situations identical to those discussed in white. And we we get we just get two examples in our brief of the types of projects or contracts that really are the same exact thing as white. It is the District of Columbia spending its own money to purchase services for itself. And that's exactly what was there any dispute in the record that at least some of the jobs that are covered by the first source act includes direct contracts between the district and companies build something for the district. I don't think there is. I don't think there can be. It's just I mean, that's I don't think that's an that's an issue of record. I think it's just an issue of the meaning of the statute. I mean, I think just on its face. I was trying to say that on its face, but it actually happened as opposed. It would seem silly to think that that was just thrown in there for those purposes. But I just are there examples that you're aware of that are in the record or a matter of public knowledge about this? Yes. So we discussed two examples in our brief. Let me see if I can. I think it's page 30, 40 of our brief. I was just trying to make sure that those aren't there's no dispute about those no disputed facts or they're in the record or. Well, so I don't think they're in the record. I don't think those particular examples were raised in summary judgment. But the the contracts themselves are are publicly available in the contracting portal that we identified there, as are many others. I just thought these were sort of clear examples. And the reply group does not dispute that those are indeed on track. They sort of are description or subject to the act. So I don't I don't think there really can be such a dispute that it applies in those circumstances. And those in that circumstance, it's indistinguishable from white and is therefore constitutional under the Commerce Clause for the same. Just curiously, is the peculiar evil just kind of not being able to tax the commuters or commuters taking jobs away from residents? I think it's more of the former, Your Honor. It's not. We have not argued that sort of non-residents are the cause of district unemployment. But the problem that we have highlighted is that is that is the taxation issue. Yes. I'm happy to answer any further questions that the panel has, but if not, we'll rest on our briefs. Rogers, do you have any questions? Thank you. Thank you very much. Mr. Kiernan, we'll give you two minutes. Do you dispute that the contracts referenced on page 40 of their brief, the one with the Metropolitan Police Department and one with the Department of Transportation are sort of direct contracts involving the district and the construction company? Do you dispute their description of the existence or description of those contracts? I don't dispute the existence of the contracts. The one I'm thinking of, I can double check, was had to do with the purchase of the police company, not construction. There's two there. There's the Department of Transportation. I don't dispute the existence. Any questions from my colleagues? No. All right. Thank you very much. The case is submitted.
judges: Millett, Childs, Rogers